UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Allstate Insurance Company and Allstate Indemnity Company,<br>            *Plaintiffs*,<br><br>            *v.*<br><br>Maria Passaro-Henry,<br>            *Defendant*. | Civil No. 3:08cv63 (JBA)<br><br><br><br>September 10, 2009 |

RULING ON PLAINTIFFS' MOTION FOR RECONSIDERATION [Doc. # 107]

I.      Background

Plaintiffs Allstate Insurance Company and Allstate Indemnity Company (collectively, "Allstate" or "Plaintiffs") brought this action on January 14, 2008 against Advanced Health Professionals, P.C. as well as its related management company and its individual owners, operators and employees,[1] alleging that they violated state and federal laws by engaging in a scheme to defraud Allstate by creating and submitting false, fraudulent and inflated medical invoices through the United States Mail for reimbursement from Allstate. In particular, Plaintiffs brought claims under the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(b) ("CUTPA"), and the Connecticut Health Insurance Fraud Act,

---

[1] Plaintiffs originally named eight defendants: Advanced Health Professionals, Health Plus, Inc., Felix Almentero, Maria Passaro-Henry, Robert Goldring, Reuben Malkiel, Melissa Malkiel, and Richard Mullin. As explained below, in light of a settlement reached among most of the parties, only Dr. Passaro-Henry remains a defendant, and therefore only she is listed in the caption.

Conn. Gen. Stat. § 53-442 ("CHIFA"), and also alleged common-law fraud. (Amended Complaint [Doc. # 66] ("Am. Compl.") at ¶¶ 974–1022.) They sought injunctive relief as well as compensatory, punitive, and statutory damages. (*Id.* at ¶. 140–42.)

Defendants moved to dismiss Plaintiffs' Amended Complaint, and on December 17, 2009 the Court dismissed the 168-page, 1,022-paragraph Amended Complaint, together with its six exhibits, without leave to amend. *See Allstate Ins. Co. v. Advanced Health Prof'ls, P.C.*, 256 F.R.D. 49 (D. Conn. 2008) ("*Advanced Health Prof'ls*").[2] Judgment entered the next day, and the parties were notified of judgment on December 23, 2008. (Judgment [Doc. # 106].) Allstate timely moved for reconsideration on December 30, 2008 (*see* Pls.' Mot. Reconsid. [Doc. # 107]), but thereafter requested that the Court not consider that motion while the parties pursued settlement. On June 9, 2009, Plaintiffs "stipulate[d] to the voluntary dismissal of this action" as to all defendants except Dr. Passaro-Henry "with prejudice and without cost to any party." (Stipulation of Voluntary Dismissal With Prejudice [Doc. # 110].) Now before the Court is Allstate's motion for reconsideration, which, for the reasons stated below, will be denied.

---

[2] The Court presumes the reader's familiarity with the factual background underlying this action. *See generally Advanced Health Prof'ls*, 256 F.R.D. at 53–59.

II.      Procedural History and the Court's Ruling on Defendants' Motion to Dismiss

      A.      Pre-Ruling Procedural History

Allstate filed suit against Defendants on January 15, 2008. Two months later, Defendants, having determined to move to dismiss the complaint, moved for a pre-filing conference (*see* Defs.' Mot. Pre-Filing Conf. [Doc. # 58]) in accordance with the Court's standing orders issued in this case, which specified:

> At th[e] [pre-filing] conference, the parties will address whether the filing of a motion to dismiss, or for summary judgment or partial summary judgment, appears warranted under the circumstances. . . . All counsel will be expected to have previously conferred on the subject matter of the proposed motion, and will be prepared to advise the Court of any pleading amendment, discovery or other matter relevant to disposition of the proposed motion. . . . At the conference, counsel will be prepared to articulate the dismissal issues or material issues contended to be disputed or undisputed in the case, referencing the relevant record supporting such contention.

(Electronic Order on Pretrial Deadlines [Doc. # 45] at ¶ (f).)

Defendants attached to their motion an amended complaint that Allstate had provided them but had not yet filed with the Court. (Defs.' Mot. Pre-Filing Conf. at 1–2.) In moving for the conference, Defendants argued that "[d]espite the numerous allegations set forth in the [Proposed] Amended Complaint (1152 paragraphs), it suffers, like the original Complaint, from several substantial pleading deficiencies," and stated their "inten[t] to file a Motion to Dismiss pursuant to both Federal Rules of Civil Procedure 12(b)(6) and 9(b)." (*Id.* at 2.) Defendants' motion for the pre-filing conference set out their challenges

3

to Allstate's Proposed Amended Complaint in some detail, including challenges to its sufficiency under Rule 9(b) worth repeating here:

> Plaintiffs' claims fail, not just because Plaintiffs' allegations of "fraudulent" billing are not based on claims of staged or phony accidents, the use of "runners" or for services and tests that were not rendered to patients, but also because they fail to allege actual fraud. . . . Close reading of the Amended Complaint reveals it to be painstakingly repetitive and replete with the adjectives "false" and "fraudulent," but devoid of facts supporting those claims of false or fraudulent billings.  Generic allegations of what the Plaintiffs claim as "fraud" more accurately amounts to a challenge to the nature and quality of Defendants' treatment of their patients. In stark contrast to truly fraudulent insurance schemes, this case does not involve the submission of phony or fictitious invoices for services never rendered.
>
> Allstate is clearly aware of the difference between pleading fraud and pleading differences in subjective opinion.  A review of the numerous Complaints alleging fraud which have been brought by Allstate against other chiropractors and health care practitioners reveals specific allegations of prior guilty pleas, use of runners, treatment of passengers in both vehicles, patient testimony as to treatment not rendered, staged accidents, patients signing multiple treatment sheets on a single visit, fraudulent use of signature stamps and sham entities.  No such allegations exist in this case.
>
> Plaintiffs' RICO and state law fraud, CUTPA and CHIFA claims are also subject to dismissal pursuant to Fed. R. Civ. P. 9(b) for failure to plead fraud with specificity.  All of Plaintiffs' claims are premised on the same alleged "fraudulent" billing practices.  As such, Rule 9(b) applies to each of Plaintiffs' claims.
>
> Plaintiffs' Amended Complaint cannot subsist on the thin gruel of the conclusory terms "fraud", "fraudulent" or "false," without specifying what makes the record or billing false or fraudulent.  A complaint must specify how Plaintiffs relied on the record as well as on which specific documents Plaintiffs relied.  Failure to meet these standards does not comport with the Second Circuit's standards for pleading fraud with specificity under Rule 9(b).  Similarly, Plaintiffs' use of summary exhibit charts attached to the Amended Complaint is to no avail because the charts are nothing more than the same generic, conclusory allegations of purported conduct involving unnecessary services as pled in the Amended Complaint.

(*Id.* at 3–4 & n.2 (citations omitted).)

The Court held a pre-filing conference on April 25, 2008 in which the parties discussed their respective legal positions and the Court explained the purposes of the conference. Counsel for Allstate represented that it was "the first time [he had] encountered [the Court's pre-filing conference] procedure" (Pre-Filing Conf. Tr. [Doc. # 108] at 3:1), and that it crafted the Proposed Amended Complaint in response to conferences among the parties regarding the intended motion to dismiss. Allstate's counsel explained:

> We had at least one, if not two, fairly productive, I thought, telephone conferences to discuss those issues, and we agreed we would try to address some of those in order to obviate the need for a motion to dismiss or further conferences and get started with discovery, and that was sort of the underlying understanding, at least in my mind, of the proposed amended complaint.
>
> I didn't file it with the Court because it was more to try to see if we could reach some kind of meeting of the minds on the perceived deficiencies. And then my understanding of the procedure, I may be incorrect, would be that if they—if the defendants weren't satisfied, then we would have this conference and be guided by your Honor. And I think after we hear the comments from everyone, then we'll be better suited to either file that one or make some further changes.

(*Id.* at 3:4–20.) After Allstate's counsel confirmed that he "ha[d] read the [D]efendants' motion for the premotion conference which sets out their grounds" (*id.* at 3:25–4:1), the Court then asked defense counsel whether their "issues change at all" in light of Allstate's proposed amended complaint and "[w]hat will be the grounds of your motion to dismiss?" (*Id.* 4:12–21.) Defense counsel explained his intended grounds for dismissal:

> [Counsel for Defendants]:    Really, your Honor, our position has not changed. Our position is that although the complaint is much more verbose than the original complaint, it really doesn't provide the

> specificity or the misrepresentations of fact that one would expect to find in allegations of fraud. . . .
>
> [W]e would be bringing a motion to dismiss, your Honor, aimed at the—well, first with regard to fraud, we would be aiming it at the failure of the plaintiffs to plead misrepresentations of fact and the other earmarks of fraud that one would expect in a complaint of this type. So for example, the cases of this type that we're used to, there are no allegations here of billing for unperformed services or phantom accidents, there is no allegations of the plaintiffs' claiming that the services were unperformed, there are no affidavits from patients saying that they were not treated as they were billed for.
>
> The Court:   Would one expect to find affidavits in a complaint?
>
> [Counsel for Defendants]:   Well, it's not affidavits, your Honor. At least pleadings that would suggest that services were not rendered. And based upon other complaints filed by [plaintiff's counsel's] law firm, it's precisely those kinds of pleadings that are present. There are none of the earmarks. As I've suggested, it would appear from the allegations in their complaint that their gripe is with the nature, the type and amount of care provided to the patients as opposed to a violation of some objective standard of care, which just simply does not exist. . . .
>
> And so, for example, if they were—they make allegations of, and I can read directly from the complaint, alleged improperly derived impairment rating, unjustified advanced testing, initiation of treatment prior to analysis of test results, treatment not justified, records submitted. These are all issues of opinion between experts, and I'm sure that [plaintiff's counsel] will summon experts to say that services were rendered in nonconformance to their standard, whereas we will similarly provide experts that will say they were in conformance with every standard, and that's simply not the issue. There has to be a misrepresentation of fact.

(*Id.* at 4:16–6:23.)  After defense counsel explained the grounds on which Defendants intended to move for each specific claim (*see id.* at 7:2–8:21), the Court then turned to counsel for Allstate:

6

> The Court: All right, [plaintiff's counsel], the purpose of the prefiling conference, particularly with respect to a motion to dismiss, is to give you an opportunity to amend your complaint to address the grounds of the forthcoming motion to dismiss as best you can. If you don't want to change your proposed amended complaint, that's fine, just file it, but what it means is that the motion to dismiss is then directed to a final product, and having been put on notice of what the deficiencies are, you are not given leave to amend if the motion to dismiss is granted.
>
> The additional purpose is that if there are to be changes that, for instance, would eliminate a count or a theory, then it limits the work that needs to be done on the motion to dismiss by not having something that is going to be superfluous. So that is really the efficiency measure, to reduce the cost and delay of this part of this civil litigation, and I think you are on—you understand plenty well what their arguments are about what they say is wrong with your amended complaint.
>
> Why don't I give you a week to do any further tweaking on your amended complaint in light of our colloquy, and then get that filed. Does that make sense?
>
> [Counsel for Plaintiffs]: That will be fine, your Honor.

(*Id.* at 8:22–9:22.) Defendants agreed to file their motion to dismiss two weeks after Plaintiffs filed their amended complaint.

Finally, the Court addressed the schedule of discovery in light of the forthcoming motion to dismiss. Counsel for Allstate wanted to begin discovery immediately, but defense counsel suggested that the parties should not begin discovery until the Court had ruled on the motion to dismiss:

> [Counsel for Defendants]: Your Honor, if the Court pleases, we feel pretty strongly about the motion to dismiss, . . . and since we're only talking about a three- or four-week period [between the date of the conference and the filing of the motion to dismiss], I would suggest

7

> that we postpone the onset of discovery and depositions until the Court's ruled on the motion to dismiss. . . .
>
> [Counsel for Plaintiffs]:   Just to interject, . . . [w]ith all due respect to my brother, and I'm sure he's confident in his argument, he mentioned my law firm, I've filed these types of suits, there is no doubt about it, in this jurisdiction, successfully in others, and I have never had one run on a 9(b) complaint. So, I would just add that.

(*Id.* at 12:2–6, 12:17–22.)  After the Court indicated that in light of the time allotted for briefing, oral argument, and consideration, it would not rule on the motion to dismiss immediately upon its being filed, Allstate's counsel stated: "To the extent that my opinion is of import, I would ask that we go ahead with discovery." (*Id.* at 13:8–11.)

Allstate filed its Amended Complaint—which was similar but not identical to the Proposed Amended Complaint—one week after the pre-filing conference (*see* Am. Compl. [Doc. # 66]), and Defendants filed their motion to dismiss two weeks later (*see* Defs.' Mot. Dismiss [Doc. # 67]).

B.   Ruling Dismissing Allstate's Complaint

In dismissing Allstate's Amended Complaint, the Court held that "[d]espite its length, the Amended Complaint fatally suffers from a dearth of actual facts in its allegations of fraud sufficient to satisfy Rule 9(b)." *Advanced Health Prof'ls*, 256 F.R.D. at 59; *see id.* at 51, 59–63 (articulating Rule 9(b) requirement for pleading fraudulent statements and explaining why the Amended Complaint "[gave] no factual explanation of 'why the statements were fraudulent,'" but instead "'[we]re conclusory or unsupported by factual assertions,'" which are "'insufficient' to satisfy Rule 9(b)") (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) and *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)).  The Court explained:

8

> Because a fraud is "[a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment," BLACK'S LAW DICTIONARY 685 (8th ed. 2004), a conclusion that a representation is fraudulent requires both that the representation be false—which in turn requires the existence of a fact with which the representation is inconsistent—and the intent that such representation, known by the speaker to be false, to be taken as true by the person to whom the representation is made.  Here, Plaintiffs allege very few representations by Defendants, and, importantly, no facts with which those representations are inconsistent.  The complaint contains no actual facts which, if proven true, could lead either to the conclusion that Defendants' representations—that is, the statements Defendants submitted to Allstate—were untrue, or that Defendants intended those who read the documents to misapprehend the information they contained. . . .
>
> Indeed, Plaintiffs do not allege any facts regarding Defendants' treatment of any patient that are derived from any source of information other than Defendants' own submissions.  Thus, their allegation that "[t]he foregoing fraudulent representations were false, or at least required the disclosure of additional facts to render the information furnished by the [D]efendants not misleading" (Am. Compl. at ¶ 1012), lays bare the problem with their complaint: not only is Allstate's allegation that Defendants' "fraudulent representations were false" tautological on its face, but without facts external to Defendants' submissions to Allstate, Allstate offers no reason how or why it was misled at the time bills were submitted for payment and what later came to light which led it to conclude that such submissions were fraudulent.

*Advanced Health Prof'ls*, 256 F.R.D. at 61 (footnotes omitted).

The Court further held that "[f]or many of the same reasons as its allegations of fraudulent statements are insufficient, the Amended Complaint's allegations of Defendants' fraudulent intent are insufficient," at base because the complaint "does not allege any facts on which to infer Defendants' fraudulent intent." *Id.* at 63; *see id.* at 51–52, 63–64 (articulating Rule 9(b) requirement that "'a plaintiff must still allege facts that give rise to a *strong inference of fraudulent intent*,' either '(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong

9

circumstantial evidence of conscious misbehavior or recklessness,'" and explaining why the Amended Complaint failed this requirement) (quoting *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir. 1999) and *Lerner*, 459 F.3d at 290–91).

Finally, the Court dismissed Plaintiffs' Amended Complaint without leave to amend, explaining:

> Although "[p]laintiffs whose complaints are dismissed pursuant to Rule 9(b) are typically given an opportunity to amend their complaint," *Olsen v. Pratt & Whitney Aircraft, a Div. of United Techs. Corp.*, 136 F.3d 273, 276 (2d Cir. 1998) (citing *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986)), "[i]n cases where such leave has not been granted, plaintiffs have usually already had one opportunity to plead fraud with greater specificity," *Luce*, 802 F.2d at 56.
>
> Here, not only were Plaintiffs already provided an "opportunity to plead fraud with greater specificity," this Court's procedures ensured that Plaintiffs were on notice, prior to filing their Amended Complaint, as to exactly the bases on which Defendants intended to move to dismiss the complaint, including, *inter alia*, insufficiency under Rule 9(b). Prior to allowing Defendants to move to dismiss, this Court held a pre-filing conference, the purpose of which, as the Court explained to counsel, "is to give [Plaintiffs] an opportunity to amend your complaint to address the grounds of the forthcoming motion to dismiss as best you can." (Pre-Filing Conf. Tr. at ¶. 8–9.) During this pre-filing conference Defendants clarified that they would move to dismiss either the original Complaint [Doc. # 1] or, if filed, the Amended Complaint that Plaintiffs had proposed (Proposed Am. Compl. [Doc. # 58-1]), including for insufficiency under Rule 9(b) as well as other reasons. In particular, Defendants stated their view that "[t]he proposed amended complaint contains the same kind of conclusory language which was set forth in the original complaint, it relies on the same kind of generic charge as the first complaint" (Pre-Filing Conf. Tr. at p. 7), stating that in their motion to dismiss they would address "the failure of the [P]laintiffs to plead misrepresentations of fact and the other earmarks of fraud that one would expect in a complaint of this type" (*id.* at p. 5) and would argue that statements included in medical bills "are not false when reasonable minds can disagree regarding whether the service was properly billed" (*id.* at p. 6). In light of Defendants' representations of the grounds on which they would base their forthcoming motion to dismiss, the Court warned Plaintiffs:

> If you don't want to change your proposed amended complaint, that's fine, just file it, but what it means is that the motion to dismiss is then directed to a final product, and having been put on notice of what the deficiencies are, you are not given leave to amend if the motion to dismiss is granted.
>
> (Pre-Filing Conf. Tr. at p. 9.)  Plaintiffs stated that such an arrangement "will be fine."  (*Id.*)   As a result, the Court dismisses Plaintiffs' Amended Complaint without leave to amend.

*Advanced Health Prof'ls*, 256 F.R.D. at 66–67.  In a footnote, the Court observed:

> The Proposed Amended Complaint is not materially different from the Amended Complaint, as filed.  At the pre-filing conference defense counsel stated of "[t]he proposed amended complaint" that "[w]e think that it's likewise deficient."  (Pre-Filing Conf. Tr. at p. 7.)  The Court can find no allegation regarding the content of the exemplar claims or the fraudulence of Defendants' statements to Allstate in the Amended Complaint, as filed, that is in any way more specific than the allegations in the original Complaint [Doc. # 1] or the Proposed Amended Complaint.  Attached to the original Complaint were six charts that included the same form of organization and information as those attached to the Amended Complaint [*see* Docs. ## 1-2 through 1-8].  And the Proposed Amended Complaint contained a lengthy series of allegations for each exemplar claim that contained the same substance as the Amended Complaint spread out over more (1,026) paragraphs.  (*Compare* Proposed Am. Compl. ¶¶ 56–1082 *with* Am. Compl. ¶¶ 61–949.)  While the Proposed Amended Complaint uses 16, rather than eight, different phrases to describe the forms of defect in each exemplar claim, such descriptions are equally unhelpful in inferring the fraudulence of Defendants' submissions as those in the Amended Complaint.  (*Compare* Proposed Am. Compl. ¶ 29 *with* Am. Compl. ¶ 33.)

*Advanced Health Prof'ls*, 256 F.R.D. at 66 n.25.

III.  Plaintiffs' Motion for Reconsideration

   A.  Standards

Plaintiffs now move for reconsideration of the Court's determination not to grant them leave to amend their complaint.  Because judgment entered before Plaintiffs moved for

reconsideration, Plaintiffs must first demonstrate their entitlement to a modification or vacatur of judgment under Rules 59(e) or 60(b) before arguing for permission to amend their complaint under Rule 15(a). *See Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 244–45 (2d Cir. 1991) ("'[O]nce judgment is entered the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b).' . . . Unless there is a valid basis to vacate the previously entered judgment, it would be contradictory to entertain a motion to amend the complaint."); *compare In re Star Gas Secs. Litig.*, 214 F.R.D. 428, 431 (D. Conn. 2007), *aff'd sub nom. Rosner v. Star Gas Partners, L.P.*, No. 07-1687-cv, 2009 WL 2581565, 2009 U.S. App. LEXIS 18817 (2d Cir. Aug. 20, 2009). Because it was filed within ten days of judgment, the Court construes Allstate's motion as a motion to vacate or amend judgment under Rule 59(e). *See United States v. Clark*, 984 F.2d 31, 32 (2d Cir. 1993) ("We conclude that a motion to reconsider a section 2255 ruling is available, [and] that it is to be treated as a Rule 59(e) motion if filed within 10 days of entry of the challenged order and as a Rule 60(b) motion if filed thereafter[.]").

Courts consider motions under Rule 59(e) pursuant to the same standard as that governing motions for reconsideration. *In re Star Gas*, 214 F.R.D. at 431 n.3. This standard is "strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice,'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18B C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 4478), and reconsideration should be granted only if "the moving party can point to controlling decisions or data that

12

the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court," *Shrader*, 70 F.3d at 257.

This Court has previously ruled on a plaintiff's request, filed within ten days after judgment entered, to reconsider its determination to dismiss a complaint without leave to amend in circumstances very similar to these. In *In re Star Gas*, after the Court held a pre-filing conference, considered the defendants' motion to dismiss, and dismissed the plaintiffs' complaint of securities fraud "pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6)" without leave to amend, the plaintiffs moved to modify the dismissal order and judgment to grant leave to file a second amended complaint. 214 F.R.D. at 429–30. The Court denied the plaintiffs' motion, holding that its pre-filing conference procedures afforded the plaintiffs "the opportunity to amend their pleadings after being given notice of the claimed defects," and that even consideration of the plaintiffs' proposed second amended complaint did not counsel in favor of vacating judgment and permitting amendment because "the proposed amendments are of such a nature that they could have been advanced previously." *Id.* at 432. In affirming this Court's decision, the Second Circuit observed that dismissal without leave to amend was not improper:

> We conclude also that the district court did not abuse its discretion in dismissing the Complaint with prejudice, despite plaintiffs['] footnote request in their opposition brief for leave to amend if the district court "deems the claims against Defendants insufficiently pleaded." Nor did the district court abuse its discretion in denying plaintiffs['] motion to modify the judgment, even assuming *arguendo* the applicability of the liberal Rule 15(a) standard. The district court gave plaintiffs[] the opportunity to amend the Complaint after a pre-motion telephone conference where the defendants described their arguments in favor of dismissal. Plaintiffs[] declined to do so. Thereafter, plaintiffs[] did not move to amend the Complaint after the defendants filed their briefs in support of dismissal. Although plaintiffs[] informally requested leave to amend in their motion papers [in opposition

13

> to the defendants' motion to dismiss], they did not submit proposed amendments or otherwise indicate how they would correct any deficiencies in the Complaint. Under these circumstances, it was within the district court's discretion to dismiss the Complaint with prejudice.

*Rosner*, 2009 WL 2581565, *2, 2009 U.S. App. LEXIS 18817, *5–*7 (citations omitted).

B. Discussion

Allstate first argues that its inability to amend its complaint works "a *manifest injustice*" (Pls.' Mot. Reconsid. at 1 (emphasis in original))) because the Court had not given it a preview of its ruling at the pre-filing conference (*see id.* at 2, 6, 8), and "extensive discovery had been completed by the time the dismissal Order entered" (*id.* at 11). Second, Allstate recites Rule 15(a)'s standard that leave to amend should "be freely given" (*id.* at 12 (quoting Fed. R. Civ. P. 15(a)); asserts that amendment, were the Court to permit it, would "not be futile" (*id.* 13; *see id.* 13–20 (stating type of amendments it would make)); and argues that its "request for leave to amend is not made in bad faith" (*id.* 20) and would not "prejudice[]" Defendant (*id.* 21). Allstate has not offered a proposed Second Amended Complaint, but proffers 80 allegations in its motion for reconsideration. (*See id.* at 14–20.) Plaintiffs' arguments in favor of vacating judgment and permitting leave to amend are unpersuasive.[3]

### 1. *Claimed Unfairness from Lack of Advance Notice of the Court's Ruling on Plaintiffs' Complaint*

First, Plaintiffs argue that "the Court's pre-filing procedure was unfair as applied in this matter" because

---

[3] Because Plaintiffs do not demonstrate their entitlement to relief under Rule 59(e), the Court does not directly address an additional argument Plaintiffs make in favor of reconsideration, which is that plaintiffs whose complaints are dismissed under Rule 9(b) are generally given leave to amend under Rule 15(e). (Pls.' Mot. Reconsid. at 4–6.)

> the Court never commented on the merits of the parties' arguments and oppositions. In essence, Allstate was left to guess how this Court would view the allegations and defendants' arguments regarding deficiencies at the time any amended pleading was filed. Moreover, Allstate was forced to endure an extreme penalty (i.e. dismissal without leave to amend) if it guessed wrong.

(Pls.' Mot. Reconsid. at 8.) This argument is meritless because "[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies," *In re Eaton Vance Mut. Funds Fee Litig.*, 403 F. Supp. 2d 310, 318 (S.D.N.Y. 2005) (internal quotation omitted), and "Plaintiff[s] clearly ha[ve] no right to a second amendment," *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (citing Fed. R. Civ. P. 15(a)). As discussed above, as a result of the parties' informal discussions Plaintiffs drafted a Proposed Amended Complaint that they believed accounted for Defendants' to-be-asserted grounds for dismissal. After being given clear notice that Defendants would pursue their position that even the Proposed Amended Complaint was insufficiently pleaded under Rule 9(b), Plaintiffs were provided an opportunity to again amend their complaint, but chose not to make any substantive amendments in reflection of their view of their amended complaint's sufficiency under Rule 9(b). That Plaintiffs were wrong does not provide them grounds for seeking a third bite at the apple.

### 2. *Cost of Discovery Already Completed*

While it may be true that the parties spent substantial sums on discovery before the Court dismissed Allstate's complaint, the colloquy between the Court and the parties at the April 25, 2008 pre-filing conference makes clear that it was Allstate that wanted to commence discovery immediately, before receiving a ruling on the motion to dismiss, based on its confidence that its complaint would survive the motion to dismiss. Allstate's argument that it would be a "manifest injustice" not to permit it another chance to amend

15

its complaint to salvage some value from the money it expended in discovery is without merit because the high cost of discovery does not by itself render viable an otherwise deficient complaint and because Allstate incurred these discovery costs at its own insistence based on its misplaced confidence that its complaint would survive Rules 12(b)(6) and 9(b).

### 3. Proffered Allegations

Even if this were "a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment," *Nat'l Petrochemical*, 930 F.2d at 245, Allstate's proffered new factual allegations do not provide grounds on which to vacate judgment and permit amendment. In its ruling the Court explained that one of the Amended Complaint's flaws was that it alleged no facts inconsistent with Defendants' misrepresentations, and indeed alleged very few facts other than those derived from the claim forms Defendants submitted to Allstate *before* Allstate filed suit. While Allstate now proffers 80 new factual allegations, it presents no reason (beyond its conclusory assertion, untethered to any particular proffered allegations, that "amendment would allow Allstate an opportunity to supplement its pleadings with valuable knowledge—gleaned through discovery—that was unavailable at the time the amended pleadings were filed" (Pls.' Mot. Reconsid. at 13–14)) that "they could [not] have been advanced previously," *In re Star Gas*, 241 F.R.D. at 432, or any showing why their addition to the complaint would not be "futil[e]," *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603–04 (2d Cir. 2005).

#### i. Prior Availability of Proffered Allegations

As to all but four of Allstate's proffered allegations that allege "facts not contained in the exemplar claims themselves or medical documentation Defendants submitted to

16

Allstate," Allstate does not show that these "facts" were unavailable to Allstate at the time it filed its Amended Complaint. For example, Allstate lists certain medical standards and descriptions of certain medical billing codes but neither demonstrates nor alleges their unavailability at the time Allstate filed its Amended Complaint.[4] And by repeating data culled from "[t]he documents submitted by the defendants" to Allstate when submitting claims for reimbursement (*see, e.g.*, Pls.' Mot. Reconsid. at 18), Allstate again relies on data that was clearly available to it prior to filing the Amended Complaint because Defendants' reimbursement claims form the basis of the lawsuit.

### ii. Futility of Amendment

The bulk of Allstate's proffered allegations suffer from the same problem as the Amended Complaint: "the fundamental failure of the Amended Complaint stems from the fact that any fraudulence Allstate claims to have discovered is based on its review of the very records that Defendants themselves submitted to Allstate," but "Allstate does not allege any facts not contained in the exemplar claims themselves or medical documentation Defendants submitted to Allstate." *Advanced Health Prof'ls*, 256 F.R.D. at 62. Many of

---

[4] The medical standards come in two varieties: (1) "guidelines" from professional medical associations, such as that "[a]ccording to the American Medical Association's Physicians' Current Procedural Terminology ('CPT') handbook, spinal ultrasounds have no medical diagnostic value" and "[u]nder the AMA CPT guidelines, chiropractic initial examinations can be coded 99201, 99202, 99203, 99204 or 99205 depending, in part, on the duration of the examination and the level of medical decision making involve in the examination" (Pls.' Mot. Reconsid. at 14, 18); and (2) allegations about standard medical practice, such as "X-rays reveal fractures; therefore, there is no medical reason to conduct [an] X-ray[]" soon after another X-ray had been taken" (*id.* at 17; *see also id.* at 18–20). Allstate also proffers descriptions of certain "CPT" codes (*see, e.g., id.* at 16, 18), but both the description of the codes and Defendants' method of employing the codes were very clearly available to Allstate at the time it filed its Amended Complaint (*see, e.g.*, Am. Compl. at ¶ 42 (stating various CPT codes and describing Defendants' use of them)).

Allstate's proffered allegations again allege information contained in the reimbursement claim forms Defendants submitted to Allstate. They reflect Allstate's conclusions that Defendants' claim forms submitted to Allstate were fraudulent—and, as a result, that it reimbursed Defendants too highly or for treatment not covered by its policies—based on Defendants' own claim forms, which does not explain why the Defendants' claim forms were fraudulent. The Court has already explained why allegations such as these are insufficient; any amendment to include them would be thus futile, and so provides no basis on which to vacate judgment and permit amendment.[5]

The parties agree that the last four of Allstate's proffered allegations are actually based on evidence Allstate obtained through discovery after its Amended Complaint was filed. (*See* Defs.' Opp'n at 14–15.) In this portion of its proffer, Allstate alleges that

---

[5] In addition, Allstate's allegations of the fraudulent nature of Defendants' claim forms—contained both in pleaded form in the Amended Complaint, and in proffered form, in the motion for reconsideration—echo affidavits of Allstate's employees and experts, which Allstate filed on January 15, 2008, three months prior to the pre-filing conference. These affidavits, like Allstate's proffered allegations, suffer from the same problems as the Amended Complaint: they conclude fraudulence based purely on the documents they allege are fraudulent, without reference to a different set of facts with which the documents alleged to be fraudulent are inconsistent.

Specifically, two of Allstate's affiants stated that Defendants engaged in "a pattern and practice of excessive, unwarranted chiropractic treatment and excessive medical billing" and that "the defendants were practicing chiropractic [*sic*] in a manner inconsistent with the patients' best interests" because "the defendants' primary focus was to (a) maximize patient treatment for potential litigation and (b) artificially increase settlement values of the underlying insurance claims." (Davini Aff. [Doc. # 9] at ¶¶ 26, 28; *see also* Bomar Aff. [Doc. # 8] at ¶¶ 14, 16.) But each of these affiants stated that these conclusions were based on their "review of the aforementioned claimant files" and the "patient-file records" submitted by Defendants. (Davini Aff. at ¶¶ 26, 28; Bomar Aff. at ¶¶ 14, 16.) The third affiant asserted similar averments, and similarly based his conclusions of the fraudulence of Defendants' submissions on Defendants' submissions themselves. (Bruno Aff. [Doc. # 10] at ¶¶ 12, 44, 46, 47.)

18

"[D]efendants utilized the same treatment protocol for all new patients" that required "three (3) weeks of appointments following the completion of the patient's initial examination" regardless of the patient's diagnosis, which is a policy that Allstate argues "exhibits a conscious disregard for the individualized medical needs of [their] patients and further demonstrates [D]efendants' motive and opportunity to commit fraud by conducting unnecessary treatment and testing on Allstate claimants." (Pls.' Mot. Reconsid. at 20.) Even assuming the Court could reasonably infer Defendants' cookie-cutter scheduling for all patients that Defendants operated without regard for their patients' best interests, that factual inference does not support the conclusion that any claim forms submitted to Allstate were false or fraudulent. Allstate does not allege facts on which to infer, for example, that Defendants lied about or obfuscated this treatment protocol, or that they claimed reimbursement for treatment they rendered pursuant to the protocol in a manner designed to hide the protocol from Allstate because they knew such treatment would not be eligible for the reimbursements they sought. More broadly, even assuming, *arguendo*, that these allegations of one-size-fits-all patient treatment could satisfy Rule 9(b)'s requirements for alleging fraudulent intent, they do not disturb the Court's conclusion that Allstate's allegations failed to explain why Defendants' reimbursement claim forms, which demonstrate this conduct by Defendants, were fraudulent in the manner required under Rule 9(b). Therefore, any amendment of Allstate's complaint to add these allegations would be futile since it would not shield the complaint from dismissal under Rule 9(b).

IV.     Conclusion

For the reasons set forth above, Plaintiffs' Motion for Reconsideration [Doc. # 107] is DENIED.

                                IT IS SO ORDERED.


                                ____/s/_____
                                Janet Bond Arterton, U.S.D.J.


        Dated at New Haven, Connecticut this 10th day of September, 2009.